Ruffin, Chief Justice,
after having stated the case as above, proceeded as follows.— The first ground of exception in this case, has been so recently and fully considered in the State v. Ilaney, that nothing remains to be added on it. ' The evidence of an accomplice is undoubtedly competent, and may be acted on by the jury, as a warrant to convict, although entirely unsupported. It is, however, dangerous-to act exclusively on such evidence, and therefore the Court may properly caution the jury, and point out the .grounds for requiring evidence confirmatory of some substantial part of it. But the Court can do nothing more; and if the jury really yield faith to it, it is not only legal, but obligatory on their consciences, to found their verdict upon it. And in Rex v. Dawlar and others, the jury were advised, that they ought to do so against all the prisoners, when, upon an indictment against several, the evidence of the accomplice was confirmed as to some of them, but not as to all. 3 Stark. 34, and note.
*412 It is not competent to reverse a judgment for an abstract proposition delivered by the 'judge, however •erroneous; and unless the evidence be so stated as ■to raise the question, it is merely abstract. Nor can the . .Supreme •Court go out of one record to another to find the evidence given, or the points made or decided in the former.
It ought to be premised, before considering the other exception, that the Court would have been under much difficulty in getting at it, had not the amendment been made in the record. It is not competent to reverse a judgment, for an abstract opinion delivered by the judge, however erroneous ; and unless the evidence be so stated as to raise the question decided, it is merely abstract. Nor can the Court here go out of one record to another to find the evidence given, or the points made or decided in the former. The record in each case must be complete in itself, without invoking that in any other case. The humanity of the Attorney-General has, indeed, properly removed the objection in this case; and it is hoped that there will be no occasion for him to be thus indulgent to a prisoner again.
Upon this objection of the prisoner, as applied to the evidence, and the instruction given on it, the Court is of opinion, that the judgment is erroneous, and that there must be a venire de novo.
The prisoner is found guilty generally, upon both counts in the indictment: yet it will serve the purpose of distinctness, to consider each separately.
The first is for a larceny -of the slave; as to which, it has been held to be a felony at the common law, and that the statute only ousts it of clergy. The evidence, we are satisfied, establishes, a conspiracy between the accused persons and the witness, to steal or seduce negroes ; and that those persons, or any of them, should carry them to a distance from their owners, apd sell them for the common benefit. But the concerting of such a plan does not make all the,parties to it guilty as principals, upon a subsequent stealing of a slave by any one of them. There must also be a concurrence and participation in the acts of taking and carrying away. This is ordinarily evinced by those acts being done by the prisoner himself, or by some other, when he is present, or so near that he can assist in the fact, or in the escape ,of him who actually perpetrates it. Presence, therefore, in its legal sense, generally distinguishes the guilt of a principal from that of an accessory-If the taking and carrying away be completed in the *413 absence of one of the conspirators, his previous assent to or procurement of those acts, do not make them his acts; nor does his subsequent adoption of them, by receiving the thing stolen, or aiding in concealing or disposing of it, according to the original design, have that effect. The reason is, that the taking and carrying away constitutes the offence, the corpus delicti; and in that he had neither actually nor potentially, a personal agency. The least removal is an asportation, and completes the crime of him who effects it. 4 Bla. Com. 231. Lapier’s Case, 1 Leach, 360. It is true, the removal must be such, as to amount to exclusive possession in the thief; and therefore, if goods-are fastened to a counter by a string, or a purse to the person, or it becomes entangled with keys in the owner’s pocket, so that the possession was not actually at any time changed, the taking those things with the view of stealing them, is not a larceny, for the want of a severance and asportation. 1 Hale, P. C. 508. Cherry’s Case, 2 East’s P. C. 556. But if the possession be once taken by the -thief, although but for ah instant, the crim.e is committed; because thereby the possession and dominion of the owner •is, at least for that instant, destroyed. Thus, if one intend to steal plate, and he take it out of a chest, and lay it on the floor, but is detected before he gets away, it is a sufficient asportation. Kel. 3]. According to these principles, the larceny in this case, was committed by Haney alone. When the witness and the prisoner, Hardin, first saw the negro, he was in the possession of Haney. According to the testimony of the owner, the negro disappeared on •Saturday night; and according to the information given by Haney to Robins, he was in the possession, and under the exclusive control of Haney, from that time, until Sunday night. There is no evidence to connect the pri.soner with the possession at any time before the meeting in Webb’s old field. It is true, it does not appear how -near that was to Mrs. Davis’s. But it cannot be taken upon this record, that it was so near, as to make that the original, or an original taking from the owner; for the instruction supposes that Haney had procured the negro to come to him, and that he afterwards delivered him to *414 Hardin, with a knowledge on the part of Hardin, that he had been stolen or seduced. The instruction must therefore have been founded on the preconcert; and on the idea that the part which Hardin played was in fulfilment of the previous plan; so as to make the whole one continuing transaction. In support of that view, it has been contended, on behalf of the state, that the original plan embraced every thing that was done, including the asportation by Hardin, as a single transaction, andjhere-fore, that it is to be so regarded now. The cases relied on to support these positions, are those of Dyer and Disting, and Atwell and O’Donnell, 2 East, P. C. 557, and 767-8. In those cases, goods were removed from one part of a barge, and one part of a warehouse to another part, with the view of concealing them, and making it more convenient to remove them entirely, when it could be done with more apparent safety; and persons, who did not concur in those acts, but assisted in the final removal from the boat and warehouse, were held to be guilty, as accomplices in the felony, notwithstanding the offence was complete upon the first removal, as to those who made it. No other cases have made the distinction between a receiver and an accomplice, so nice. But the principle established by them is probably sound. Yet it do$s not reach the case before us. Those cases proceed distinctly on the ground, that while the goods remained in the barge or warehouse, they were properly in the place where the owner had deposited them, and were therefore virtually in his custody; and he could not be said by those, who assisted in the act of finally carrying them away, to have lost his dominion over them, until they were taken from that place of deposit. But that does not apply in a case where a possession is gained by the first removal, clearly in exclusion of that of the owner. In King’s Case, Easter Term, 1817, Russ. & Ry. Cr. Cas. 332, some persons stole a parcel of butter out of a warehouse, and carried it along the street, thirty yards only, and then brought the prisoner to the place, and informed him of what they had done, and he assisted in carrying the property to a cart, which was kept in waiting at some distance, to convey it away. At first, it *415 was thought the prisoner was guilty, upon the ground, that he was present, aiding and abetting in the continuation of the larceny, by carrying the goods to the cart; and he was found guilty. But the case being reserved for the opinion of the twelve judges, they held the conviction wrong, because the taking was complete, before the prisoner had any part in the transaction. In that case, it does not appear, that there was any previous conspiracy; though from the immediate concurrence of the prisoner, when carried to the spot, one might be readily inferred, if not to steal that particular property, yet to unite in thefts generally, as in the case before us. But in Kelly’s Case, in 1820, Russ. & Ry. Cro. Cas. 421, that feature was supplied. The prisoner was tried and convicted before Mr. Justice Bayley, for stealing two horses. It appeared in evidence, that one Whinroe and the prisoner went to steal the horses. But the prisoner stopped when they got within half a mile of the place where the horses were, and Whinroe went on, stole the horses, and brought them to the place where the prisoner was waiting for him, and then they both rode 'them away together. The learned judge thought Kelly guilty, as well as Whinroe; but upon adverting to King’s Case, he thought his first opinion wrong, and reserved the case. All the judges held the conviction wrong; being of opinion, that the prisoner was an accessary only, and not a principal, because be was not present at the original taking. If going towards the place where a larceny is to be committed, in order, according to a previous agreement, to assist in conveying away the property, and actually assisting accordingly, will not make the person a principal, if he was at such a distance at the time of the taking, as not to be able to assist in it; it follows a fortiori, that merely receiving the stolen goods, twelve hours after they were taken, without any previous knowledge that they had been taken, or even that they in particular were to be taken, can only render the person an accessory to the larceny. It is erroneous to suppose, because in the conspiracy the ultimate disposition of the property, and its being carried towards that end first by the hand of one of the conspirators, and then of another, *416 was contemplated, that the whole is one continuing transaction. Those were to be events consequent upon- the larceny. They do not enter into the larceny, as- parts- of j , . , , , the corpus delicti; but that crime was complete by the-original caption and asportation from the possession of the owner. The common unlawful design to steal, does not make each of the parties a principal, unless, as Judge FosteR says, p. 350, at the commission of the crime “ each man operates in his station at one and the same instant,. towards the same common designas where- one is to-commit the fact, and others to watch at proper distances,, to prevent surprise, or to favour escape, or the like.
The foregoing observations enable us in a good degree,, we think, to arrive at a proper conclusion, upon the second count of the indictment, which is for seducing and conveying away the slave. This is a new offence, and depends entirely upon the statute. The Court is not, indeed, free-fropa doubt, whether the known circumstances under which the crime of seducing slaves is ordinarily perpetrated, requiring the cooperation of many in- taking, concealing, or harbouring and transporting them, do not require upon the words “ take or convey,” in the statute,, an,interpretation, that either constitutes the offence, within the meaning of the legislature. If that were correct, then the conveying by one, although another had stolen the-slave, would itself be a principal felony. This doubt has not been slightly strengthened by the application in the same section of the act, of the same term “ convey,” to-' free negroes ; it being made a capital felony, to “ take or convey a free negro out of this state into another, with-intention, &c.” But upon deliberate consideration, we have felt ourselves bound, in a case so highly penal-, to-construe the statute, in reference to slaves,'to mean a taking and carrying from the possession of the■ owner; or, in-other words, that convey is used merely as expressive of' asportation in other cases. The indictment before us is-framed on that notion; charging that the negro was in the possession of the owner; and that the prisoner “ did take and convey him away from the possession of her, the said, 8fc” That we deem the proper sense of the act-, *417 The preamble is indicative of it. It recites the pernicious practices of stealing, or otherwise “ carrying away” slaves, as also of stealing “ and carrying off ” free negroes ; which shows, that convey is substituted, in the body of the act, for cam) away, and is used in the same sense. Besides,, /“conveying” implies two termini; the one from which the person is conveyed, and the other, to which he is conveyed. With respect to free negroes, the former is necessarily this state, and any part of it; because the subject is alike free everywhere, and the offence is conveying him out of this state; and of course the latter terminus is any other state. But with respect to slaves, the asportation need not be out of this state ; but may be altogether in it. Unless, therefore, the point at which it is to begin be when-the slave was in the owner’s possession, the act gives no other terminus. The distinction is the clearer, as the preamble applies the word away to slaves, and off, to> free negroes. The point has never been brought directly to the notice of the Court heretofore; but cases have-arisen, in which it would have been decisive, and saved much discussion, if it had been deemed tenable. For instance, there could have been no difficulty in Davis’s Case, 2 Car. Law Repos. 291, if every conveying a slave with intent to sell, be within the act, and it would have been immaterial whether a runaway slave was the subject of larceny, or not. In Jernagan’s Case, N. C. Term Rep. 44, Chief Justice Tayloh was of opinion, that the act did not even embrace a person who was present at the original taking, aiding and abetting in it, because his was not the hand which'committed the fact. The other members of the Court did not indeed concur in that part of the opinion ;• but there was no impression entertained, that a subsequent distinct asportation, after the-owner’s possession-was lost, made the person a principal felon, upon the force of those words, “ or convey.” We think, if such had been the-purpose of the legislature, it would have been explicitly expressed, in terms more appropriate,, and less equivocal. If others besides those who seduce slaves, and convey them from the possession of the owners, or participated in those acts, had béen meant, the act would have expressly *418 mentioned procurers and receivers, or used some terms which explicitly embrace them; as has been done in analogous cases. The statute against the forcible abduction of women, 3 Hen. 7, c. 2, furnishes an example. After reciting the evil of women being “ taken by misdoers, contrary to their will, and married, or defiled,” it enacts, that “ such taking, •procuring, or abetting the same, and also receiving ivittingly such women, be felony; and that such misdoers, takers, and procurators to the same, and receitors, be adjudged principal felons.” So the statute of 4 & 5 Phil, and Mary, against alluring away female children from their parents, uses this very word “ convey,” but in a way which leaves no doubt of its proper signification. 'It recites the dangerous practices by lewd persons, and others, that for reward buy and sell female children, secretly allured to contract matrimony with unthrifty persons, of taking by sleight or force and conveying away female children from their parents ; and enacts, “ that it shall not be lawful tq any person or persons, - to take or convey away, or cause to be taken or conveyed away, any maid, &c., out or from the possession, custody, or government of the father of,” &c. And the language in a very modern British statute upon this subject, that of 9 G. 4, c. 31, is equally explicit. The 19th section enacts, “ that if any person shall, from motives of lucre, take away or detain any woman against her will, with intent to marry or defile her; every such offender, and every person coun-selling, aiding, or abetting such offender, shall be guilty of felony.” The 21st section enacts, “ that if any. person shall maliciously, either by force or fraud, lead or take away, or decoy or entice away, or detain any child under the age of ten years, with intent, &c., or if any person, shall, with intent, &c., receive or harbour any child, knowing the same to have been, by force or fraud, led, taken, decoyed, enticed away or detained, as before-mentioned; every such offender, and every person .aiding, counselling, or abetting such offender, shall be guilty of felony.” Those acts plainly embrace procurers and receivers, or those who do acts, subsequent to the commission of the offence by the original perpetrator, in aid *419 of him, or in further prosecution of his or a common design. If we could find any such language in our statute, now under consideration, we should not hesitate to enforce it upon the prisoner, for we have no doubt that his acts are within the mischief which the legislature meant to remedy; but wre cánnot find in the act itself a warrant for holding the prisoner, or Robins, or Williams, to be more than accesssories to the felony of seduction committed by Haney. The judgment was therefore erroneous, and must be reversed; and a venire de novo awarded to the prisoner, Hardin.
Daniel, Judge, concurred with the Chief Justice.